UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JAMIE RENEE HARPER, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:16-CV-843-JD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Jamie Renee Harper suffers from the severe impairment of diabetes mellitus and quit working in 2008 because her job at the bank didn't allow her the time she needed to eat and regulate her sugar levels. In January 2012, she applied for disability benefits alleging disability as of July 1, 2008. After holding a hearing (R. at 39-68), the administrative law judge ("ALJ") disagreed and found that jobs existed which Ms. Harper was capable of performing. The Appeals Council vacated that decision and remanded the case so the ALJ would give further consideration to Ms. Harper's maximum residual functional capacity ("RFC")[1], especially in light of credited evidence that indicated she required a job that allowed her to change positions at-will from sitting, standing, or walking. (R. at 141-42). Upon remand, the ALJ held another hearing during which Ms. Harper, her husband, a medical expert ("ME"), and a vocational expert ("VE") testified. (R. at 69-120). The ALJ again denied benefits after finding that Ms. Harper was

---

[1] RFC is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

capable of performing work.[2] (R. at 20-32). The Appeals Council denied a request for review. (R. at 1-7). Ms. Harper then filed this action seeking judicial review of that decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Based on the below reasons, the Court remands this matter to the Commissioner for further proceedings.

## I. FACTUAL BACKGROUND

Ms. Harper's medical records reveal that she has continuously suffered from diabetes mellitus since 2006. (R. at 413-741). In May 2006, Dr. Bejes referred Ms. Harper to Dr. DeKeyser, an endocrinologist, who prescribed insulin therapy. (R. at 473-74). She then regularly sought treatment from another endocrinologist, Dr. Gopan, who eventually prescribed her an insulin pump in March 2011. (R. at 460). By early 2012, Ms. Harper began complaining of bilateral foot pain and was diagnosed with severe diabetic peripheral neuropathy for which Neurontin was prescribed. (R. at 550-58, 590-93, 625-34, 664-81). Despite Ms. Harper's continuous glucose monitoring and compliance with regular treatment, data confirms that her blood sugar levels continue to fluctuate significantly and often, hence the reason her condition has repeatedly been described as brittle diabetes. *Id*.

Ms. Harper's testimony confirmed that her insulin pump does not monitor her blood sugar level; rather, she must test her blood by pricking her finger six to eight times per day. If her blood sugar level is high (which occurs two or three times a day), then she must dispense insulin; but if her blood sugar is low (which occurs three or four times a week), then she must take the time to eat. She is supposed to recheck it after ten minutes until it becomes regulated, and it can take a half hour or more for her blood sugar level to change in response to food or insulin.

---

[2] Interestingly, the ALJ said little about Ms. Harper's need for an at-will sit/stand option, but the VE's testimony indicated that the identified jobs would allow one to stand for a few minutes each hour while remaining on task. (R. at 115-16).

Further complicating matters is the fact that Ms. Harper suffers from hypoglycemic unawareness, so she is often unaware of deep drops in her blood sugar. Ms. Harper testified that her blood sugar fluctuations cause her to become forgetful, irritable, tired, and confused throughout the day. Ms. Harper's husband described her daily struggle with diabetes as a "rollercoaster."

In deciding whether Ms. Harper was disabled, the ALJ acknowledged that the medical records supported Ms. Harper's suffering from the severe impairment of diabetes mellitus and significant blood sugar level fluctuations. (R. at 22, 27). The ALJ then assigned "great weight" to the ME's testimony which was largely consistent with the ALJ's assessed RFC. (R. at 28). In relevant part, the RFC entailed light work without indicating any need for additional breaks. (R. at 24). In supporting this aspect of the RFC, the ALJ explained that the ME "testified he did not expect the claimant would need unscheduled breaks to check her blood sugars at work." (R. at 28).

In deciding the type of work that Ms. Harper could perform, the ALJ rested on the VE's testimony—that based strictly on the hypothetical (which also did not include a requirement for unscheduled breaks since it mirrored the assessed RFC), Ms. Harper would not be able to perform her past work, but she could perform work as an order clerk, charge account clerk, and information clerk. The VE acknowledged that he didn't know how long it took to conduct a blood sugar test, but if a person needed additional unscheduled breaks or was off task 20% of the workday, then that person would be unemployable.

Ultimately, the ALJ found at step five that Ms. Harper was not disabled because she could perform the jobs identified by the VE, as premised on the ALJ's ultimate RFC determination.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a

"logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. *See* 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met, in between steps three and four, the ALJ must then assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that

5

there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

On appeal, Ms. Harper raises a host of issues; but given the ALJ's elaborate workup of the medical records, only one of the arguments raised by Ms. Harper merits discussion—that is, whether the ALJ committed error by affording "great weight" to the ME's opinion in deriving the RFC, while discounting other evidence supporting further limitations. The Court answers this question in the affirmative because the ALJ's discussion concerning Ms. Harper's need for breaks beyond those normally provided was insufficient for the reasons that follow.

The Court acknowledges that an ALJ is entitled to rely on a reviewing physician who has never examined the claimant but has read the claimant's file in order to provide guidance to the ALJ. *See generally* 20 C.F.R. § 404.1527. The opinion of the ME is of this type, to which the ALJ assigned great weight. However, in relying on the ME's opinion, the ALJ mischaracterized the ME's testimony on an essential fact—that is, whether or not Ms. Harper's medical condition required unscheduled or extended breaks.

A review of the ME's testimony reveals his belief that given Ms. Harper's "fairly wide swings of blood glucose . . . , which are frequent, . . . [and] she does dip into hypoglycemia," Ms. Harper would need to check her blood sugar frequently and have access to a prescribed diet while at work. (R. at 95, 102-03). The ME then noted that Ms. Harper would have her regularly scheduled breaks (mid-morning, lunch, and mid-afternoon) to attend to her diabetic treatment needs. (R. at 107). But when asked to clarify whether Ms. Harper would need more frequent breaks, the ME twice confirmed that Ms. Harper's specific needs would be based on her insulin pump results after testing her blood sugar level. (R. at 103, 106-07). In other words, while the ME agreed that Ms. Harper could tend to her diabetic testing needs during regular breaks, his

other responses made clear that the need for additional or extended breaks would vary based on her condition at that moment. *Id*. Thus, it was error for the ALJ to formulate his RFC on the unsubstantiated basis that the ME "did not expect the claimant would need unscheduled breaks to check her blood sugars at work." (R. at 28). Accordingly, while the final responsibility for deciding a claimant's specific work-related or RFC limitations is reserved to the ALJ, *see* 20 C.F.R. § 404.1527(e)(2), the problem in this instance is that the ALJ crafted an RFC based on credited ME testimony that was not given. And for that reason, the ALJ's RFC decision cannot stand since it lacks evidentiary support. *Lopez*, 336 F.3d at 539.

Furthermore, there was other evidence in the record that supported Ms. Harper's need for unscheduled (or lengthier) breaks during the workday. *Cf. Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (noting that an ALJ is entitled to rely on medical experts when no contrary evidence is presented). Ms. Harper provided uncontroverted testimony that after eating food or injecting insulin in response to a low or high glucose reading, she then had to recheck her blood sugar level ten minutes later until it became regulated. Therefore, even assuming Ms. Harper is proficient at quickly running the insulin test (since the ALJ never solicited such information), the ALJ was still required to address this evidence suggesting the need for frequent extended breaks, and explain how Ms. Harper's medical needs could actually be addressed during the regular parameters of full-time employment. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir.1997) (noting that an ALJ "must articulate, at least minimally, his analysis of the evidence so that this court can follow his reasoning.").

The need to provide this analysis was especially prudent since Drs. Bejes and Gopan had both opined that Ms. Harper was unable to regulate her blood sugar level during a regular work schedule. Specifically, in September 2008, Dr. Bejes reported that it was impossible for Ms.

Harper to control her diabetes with her employment due to her inability to eat appropriately. (R. at 450). And in 2012 and 2014, long-term treating endocrinologist Dr. Gopan opined that Ms. Harper would need fifteen to thirty-minute unscheduled breaks every few hours while working a low stress job. (R. at 606, 728). These treating physician opinions are ordinarily afforded special deference in a disability proceeding[3] and the ALJ must offer "good reasons" for discounting them. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Here, the ALJ explained why she discredited the treating physicians' opinions. (R. at 28). But none of the ALJ's reasons adequately addressed whether a more flexible work schedule was necessary in light of the objective evidence (identified by the ALJ), which documented Ms. Harper's glucose level fluctuations (including episodes of hypoglycemia and hyperglycemia) and her need to frequently test and take the time necessary to regulate her blood sugar. Accordingly, it was incumbent upon the ALJ to specifically address evidence which would seemingly support the finding that Ms. Harper was not able to work absent additional break time. 20 C.F.R. § 404.1527.

Ultimately, the ALJ's failure to properly consider the evidence and adequately explain the basis for her conclusions, as identified herein, calls into question the soundness of the ALJ's RFC finding. In turn, the insufficiently supported RFC finding led the ALJ to ask hypotheticals of the VE which omitted claimed (and potentially credible) limitations caused by Ms. Harper's well-documented problems with diabetes mellitus. In fact, the VE had testified that if the

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c; *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 81 FR 62560 at 62573-62574 (Sept. 9, 2016) ("we would no longer give a specific weight to medical opinions . . . this includes giving controlling weight to medical opinions from treating sources . . . [and] [w]e would not defer or give any specific evidentiary weight, including controlling weight, to any . . . medical opinion, including from an individual's own healthcare providers."). As Ms. Harper's application was filed before March 27, 2017, the treating physician rule applies. *See id*. § 404.1527.

hypothetical person needed additional unscheduled breaks or was off task 20% of the workday, then that individual would be unemployable. Accordingly, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Ms. Harper is capable of performing.[4] *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps four and five because a flawed RFC typically skews questions posed to the VE); SSR 96-8p. Thus, until the hypotheticals presented to the VE include the functional limits that the ALJ accepts as credible, and the ALJ adequately explains the claimant's actual limitations and resulting RFC based on the relevant medical evidence, 20 C.F.R. §§ 404.1545, 404.1546(c), step five cannot be affirmed in this appeal. *See Young,* 362 F.3d at 1003-05. The remedy for the shortcomings noted herein is further consideration, as requested by Ms. Harper's counsel, not an award of benefits.

---

[4] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). This exception does not apply here, since the VE never indicated having reviewed Ms. Harper's medical records, nor did he indicate in his responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ, and not on the record itself or the limitations of the claimant herself. *Id.* (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).

## IV. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: February 1, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court